UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ADE BROWN,

                Plaintiff,                Case No. 1:16-cv-968

v.                                                Honorable Paul L. Maloney

VERONICA PEREZ et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff currently is incarcerated in the Ionia Correctional Facility, but the events giving rise to his complaint occurred at the Bellamy Creek Correctional Facility (IBC). In his *pro se* complaint, Plaintiff sues the following IBC employees: Sergant Veronica Perez, Correctional Officer Roland Walls, Warden Tony Trierweiler, Deputy Warden (unknown) McChauley and Unknown Parties, named as "Chemical Agents Team."

Plaintiff alleges that on the morning of October 4, 2015, Defendant Walls came to his cell and told him to cuff up for transfer to another cell for suicide watch because mental health had received a kite with Plaintiff's name on it stating that he wanted to harm himself. Plaintiff refused, telling Walls that he did not write the kite and was not suicidal. According to Plaintiff, "numerous fake kites were wrote [sic] on me before and everytime [sic] I went on suicide it proved it wasn't my handwriting and I'll be returned to my cell." (Compl., ECF No. 1, PageID.3.) Plaintiff "plead[ed] his case" to Walls, but Walls responded that Plaintiff could come out of his cell the easy way or the hard way and walked away. Defendant Perez then asked Plaintiff to come out of his cell. "[O]nce again [Plaintiff] told her no," and continued to argue that he did not write the kite. (*Id*.) Shortly thereafter, Defendant Perez, accompanied by the Chemical Agents Team:

> [G]assed me twice with tear gas. As I started to choke in my cell, they rushed in and slam[med] me to the ground, restrained me in the cell where I almost lost concious [sic]. I was put in the shower, then put in restraints on suicide for a few hours where I was burning and could not move.

(*Id.*) Plaintiff was moved to a new cell several hours later.

Plaintiff filed a Step I Grievance asserting excessive use of force. Defendant Perez provided the following Step I response:

> Prisoner Brown was asked several times to come out of his cell to be moved to a Direct Observation Cell. Healthcare received a kite that stated prisoner Brown was going to hurt himself. Several officers as well as a shift commander asked him to move cells; every time he refused. Authorization was given by a deputy for the use of a Cell Extraction Team and Chemical Agents. The squad was assembled and again he was asked to come out, he refused. Prisoner Brown was given many opportunities to come out of his cell. [T]he squad leader on camera offers from for prisoner Brown to come out, he still refused. Chemical Agents were dispensed and he was given an opportunity at that time too. Chemical Agents were dispensed a second time and the squad still had to go into the cell to remove him. Prisoner Brown was then placed in standing soft restraints where he stayed in them for exactly 2 hours and 20 minutes. Prisoner Brown was given many chances to come out of his cell on his own but refused to cooperate. At no time did staff use excessive force. This grievance is unsubstantiated and was not resolved at this step.

(Step I Grievance Response, ECF No. 1-1, PageID.10.) Plaintiff's Step II and III grievance appeals were denied.

Plaintiff contends that the of chemical agents and cell extraction by Defendants Perez, Walls and the Chemical Agents Team constituted excessive force in violation of the Eighth Amendment. He alleges that the "Warden and Deputy Warden authorized this illegal act." (Compl., ECF No. 1, PageID.3.) Plaintiff further alleges, "I was left traumatized for weeks, skin burning and never received medical help." (*Id.*) Plaintiff seeks compensatory and punitive damages.

## Discussion

### I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-

46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). When assessing a claim of excessive force, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "To determine such motivations on the part of correctional officers, courts should consider the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury." *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992).

The Sixth Circuit repeatedly has found that the use of chemical agents does not constitute cruel and unusual punishment if reasonably necessary to subdue recalcitrant prisoners. *See, e.g., Jennings v. Peiffer*, 110 F. App'x 643, 646 (6th Cir. 2004) (affirming grant of summary judgment to defendant officer because he did not act maliciously or sadistically in spraying a chemical agent to secure prisoner-plaintiff's compliance with an order); *Davis v. Agosto*, 89 F. App'x 523 (6th Cir. 2004) (Prison officials did not violate inmate's Eighth Amendment rights by spraying mace into his cell after inmate refused officer's order to place his hands next to tray slot so that he could be handcuffed); *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (affirming summary judgment in favor of prison official and noting "that the use of mace to control a prison inmate is not malicious or sadistic"); *Miller v. Palmer*, No. 99-2352, 2000 WL 1478357, at *2 (6th Cir. Sept. 27, 2000) (officers did not violate the Eighth Amendment when prisoner "refused to remove his arm from his food slot[,] refused to allow officers to place him in soft restraints[, and was] given several opportunities to comply with the officers' orders before chemical agents were used"); *Thomas v. Greene*, No. 99-3179, 1999 WL 1253102, at *1 (6th Cir. Dec. 17, 1999) (officer did not violate the Eighth Amendment when prisoner was "threatening and uncooperative . . . and [the officer] did not use more force than was necessary to cause [the prisoner] to comply with his requests").

In this case, Plaintiff admittedly refused repeated orders to come out of cell. Plaintiff was being moved to an observation cell for his own protection after health services received a medical kite signed with Plaintiff's name, in which he threatened to harm himself. Plaintiff's assertions that he did not write the note and Defendants were not listening to him did not excuse his non-compliance with the direct orders of prison officials. "'Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.'" *Caldwell*, 968 F.2d at 601 (quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)).

> "When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force. While experts who testified on behalf of the plaintiffs suggested that rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way."

*Id.* at 602 (quoting *Soto*, 744 F.2d at 1267). Because Plaintiff refused to come out of his cell, even after being sprayed with chemical agents, the team was required to enter his cell and place him in restraints. While Plaintiff alleges that he was "slammed" to the ground, he does not allege that he suffered any physical injuries, other than a burning sensation from the chemical agents. Plaintiff alleges that he received a shower to wash off the chemical agents before being taken to the observation cell. Based upon the facts alleged in the complaint, Plaintiff cannot show that Defendants acted with a wanton, malicious, or sadistic intent when they removed Plaintiff from his cell.

Plaintiff further claims that he never received medical assistance following the use of chemical agents and cell extraction. The Eighth Amendment is violated when a prison official

is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff does not allege what type of medical treatment was warranted. Even if he could satisfy the objective component, he cannot satisfy the subjective requirement. Plaintiff does not allege that he ever requested medical treatment from any of the named Defendants during or immediately after the cell extraction. Any subsequent request for medical treatment would have been directed to members of the health services department, none of whom are named as Defendants in this action. Consequently, Plaintiff cannot show that the named Defendants were deliberately indifferent to a serious medical need.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  September 21, 2016              /s/ Paul L. Maloney
                                                        Paul L. Maloney
                                                        United States District Judge